UNITED STATES DISTRCT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARGIL ANTHONY NICHOLSON,<br>  *Plaintiff*, | : | Case No. 3:22-cv-1165 (OAW) |
| | : | |
| v. | : | |
| | : | |
| MACKENZIE[1], ET AL.,<br>  *Defendants*. | : | MAY 9, 2023 |

## INIITAL REVIEW ORDER RE AMENDED COMPLAINT

Self-represented plaintiff Cargil Anthony Nicholson has filed an Amended Complaint, ECF No. 11-1, in accordance with the court's December 21, 2022, order. He names three defendants, Captain McKenzie (John Doe 2), Officer Outar (John Doe 1), and Administrative Remedies Coordinator Jane and/or John Doe. Plaintiff asserts two claims, failure to protect, and retaliation. He seeks damages only.

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners that seek relief against a government entity, or against an officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss a complaint (or any portion thereof) that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Upon thorough initial review of the facts and allegations in the Amended

---

[1] While the case caption spells this name "Mackenzie", Plaintiff repeatedly uses "McKenzie" throughout his Amended Complaint and other documentation, and there is no corrective filing by Defendants to date. Accordingly, the court will use the McKenzie spelling alleged by Plaintiff.

Complaint, all official capacity claims against any defendant, all claims against defendants McKenzie and Administrative Remedies Coordinator Doe, and the failure to protect claim against Officer Outar are dismissed pursuant to 28 U.S.C. § 1915A(b).  The case will proceed on the individual capacity claims against Officer Outar alleging the deliberate indifference to safety.

## I.     FACTUAL BACKGROUND

While the court will not recite all of the facts alleged in the Amended Complaint, it will summarize the basic factual allegations for context in support of its ruling.

On April 11, 2022, Officer Outar opened Plaintiff's cell door and permitted inmate McBean, who was not assigned to the cell, to enter.  Inmate McBean exposed his penis and told Plaintiff to "suck it" because Plaintiff "owed him."  Plaintiff told McBean to leave and he did so, stating that he did not want to kill anyone else.

The following day, Plaintiff confronted Officer Outar and asked him not to open Plaintiff's cell door for inmate not residing in Plaintiff's cell.  Plaintiff also filed a PREA complaint, but he asserted an incorrect time for the incident and his claim was dismissed.  He also was disciplined for filing a false report, though the charge was overturned on appeal when prison officials reviewed footage for time beyond that alleged by Plaintiff.

Following the incident, Officer Outar began calling Plaintiff a rat and a snitch in front of other inmates, subjecting Plaintiff to threats from other inmates and creating an unsafe environment for Plaintiff.  Officers fail to open Plaintiff's cell door for meals, lose his mail, and frequently search his cell.

## II.    DISCUSSION

Plaintiff identifies two causes of action in his Amended Complaint: failure to protect, and retaliation.

**A. Failure to Protect / Deliberate Indifference to Safety**

Plaintiff alleges that Officer Outar failed to protect him from harm, or that he was deliberately indifferent to his safety, by permitting inmate McBean entry to his cell, and by labeling him a snitch before other inmates.  To state an Eighth Amendment claim for failure to protect, or deliberate indifference to safety, Plaintiff must show: (1) that he was confined under conditions that posed a substantial risk of serious harm, (2) that Defendant knew of such risk, and (3) that Defendant failed to take reasonable actions to abate or to avert the harm.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. Department of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes.  *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).  The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

Plaintiff alleges that Officer Outar opened his cell door and permitted inmate McBean to enter the cell and sexually harass him.  He also alleges that, after he complained about Officer Outar's actions, Officer Outar called him a snitch before other inmates subjecting him to threats of violence.  It is not clear from the facts alleged whether Officer Outar knew of inmate McBean's intent when he afforded him access to Plaintiff's

3

cell. However, he would have been aware of the ramifications of labeling Plaintiff a snitch. In addition, rather than taking action to avert the harm, Officer Outar caused the conditions. The court finds that these claims would benefit from further development of the record and the adversarial process. Accordingly, the deliberate indifference to safety / failure to protect claim will proceed against Officer Outar. Defendant may file a motion to dismiss if he believes the allegations fail to state a claim for relief.

### B.  Retaliation

Plaintiff alleges that Officer Outar retaliated against him for reporting that Officer Outar permitted inmate McBean to enter his cell and to sexually harass him.

First Amendment retaliation claims require an inmate plausibly to allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The United States Court of Appeals for the Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). Cases asserting retaliation claims for inmate speech generally concern complaints made to prison officials regarding the conduct of correctional officers or prison conditions. *See Milner v. Lamont*, No. 3:20-cv-1245 (JAM), 2022 WL 2110971, at *8 (D. Conn. June 9, 2022).

Plaintiff alleges that, immediately after he complained about Officer Outar

permitting inmate McBean to enter his cell, Officer Outar began to call Plaintiff a snitch in front of other inmates causing other inmates to threaten violence against Plaintiff. For purposes of initial review, the court concludes that Plaintiff adequately has alleged that Officer Outar took adverse action against him in response to his complaints about the officer's conduct. Therefore, Plaintiff's First Amendment retaliation claim against Officer Outar in his individual capacity will proceed beyond initial review. As with the deliberate indifference to safety / failure to protect claim discussed above, this issue could benefit from development through the adversarial process, and Defendant may file a motion to dismiss if he believes the allegations fail to state a claim for relief.

### C. Captain McKenzie

As to Captain McKenzie, Plaintiff only alleges that, after the incident with inmate McBean he submitted an inmate request to Unit Manager Captain McKenzie but received no response. However, he also alleges that an investigation was conducted. The inmate request, which is attached to the Amended Complaint, only complains about Officer Outar letting inmate McBean enter Plaintiff's cell to sexually harass him. *See* Doc. No. 11-2 at 9.

In order to recover damages under section 1983, Plaintiff must show Captain McKenzie's "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Personal involvement of a supervisory official is not established "by reason of [the defendant's] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Instead, Plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory

5

liability." *Id.* at 618.

Plaintiff does not allege facts suggesting that Captain McKenzie was responsible for inmate McBean's entry to his cell or that he labeled Plaintiff a snitch before other inmates. Plaintiff only alleges that he complained to Captain McKenzie about the sexual harassment after it already had occurred, and although Captain McKenzie did not respond to Plaintiff's inmate request, an investigation into Plaintiff's claim was conducted. As Plaintiff alleges no facts showing that Captain McKenzie violated his constitutional rights, the claim against Captain McKenzie is dismissed.

### D. Administrative Remedies Coordinator

Plaintiff includes the Administrative Remedies Coordinator as a defendant but includes no claims or allegations against that individual. As Plaintiff has attached to his Amended Complaint copies of inmate requests and a grievance, the court assumes that Plaintiff's claim related to the processing of his administrative remedies.

An inmate has no constitutional right to an administrative remedy program, to have an administrative remedy properly processed or investigated, or to receive a response to an administrative remedy he has filed. *See Crispin v. Sussel*, No. 3:21-CV-885(KAD), 2023 WL 22421, at *5 (D. Conn. Jan. 3, 2023). The Second Circuit has held that due process claims regarding prison grievance procedures "confuse[] a state-created procedural entitlement with a constitutional right" and that "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Any claims against the Administrative Remedies Coordinator are dismissed.

### E. Official Capacity Claims

Plaintiff does not indicate whether he names the defendants in their individual or official capacities. However, it is well established that a plaintiff may not maintain a claim against a state defendant in their official capacity for monetary damages, because such claim is barred by the Eleventh Amendment to the Constitution of the United States. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, to the extent that Plaintiff seeks damages from the defendants in their official capacities, such claims are dismissed.

### III.   ORDERS

All claims against any defendant in his or her official capacity, all claims against defendants McKenzie and Administrative Remedies Coordinator Doe **are dismissed** pursuant to 28 U.S.C. § 1915A(b). The case **will proceed** on the claims against Officer Outar (in his individual capacity) for deliberate indifference to safety/failure to protect, and retaliation.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If Plaintiff wishes to proceed immediately on the claims against Officer Outar only as set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket within thirty days from the date of this order informing the court that he elects to proceed with service as to the claims against Officer Outar. The court will then begin the effort to serve process on Defendant Outar in his individual capacity.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the dismissed claims

asserted in his Amended Complaint (in order to attempt to state a viable claim), he may file a Second Amended Complaint within thirty days from the date of this order. A Second Amended Complaint, if filed, will completely replace the Amended Complaint and the court will not consider any allegations made in the Amended Complaint while evaluating any Second Amended Complaint. The court will review any Second Amended Complaint to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file a Second Amended Complaint, the Amended Complaint addressed by this Initial Review Order will not proceed to service of process as to any defendant.

If the court receives no response from Plaintiff within thirty days from the date of this order, the court will presume that Plaintiff wishes to proceed on the Amended Complaint as to the claims permitted to proceed by way of this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any way thereafter.

**Change of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write on the notice, PLEASE NOTE MY NEW ADDRESS. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should list all of the case numbers in the notification of change of address. Also, Plaintiff should notify Defendants (or counsel for Defendants) of any such new address.

**IT IS SO ORDERED** at Hartford, Connecticut, this 9th day of May 2023.


                              /s/
                              Omar A. Williams
                              United States District Judge